[No. 5311–0–II.   Division Two.   November 22, 1983.]

THE STATE OF WASHINGTON, *Respondent,* v. THOMAS D. BOWERS, *Appellant.*

*Michael L. Flynn,* for appellant.

*William H. Griffies, Prosecuting Attorney,* and *Chris Quinn–Brintnall, Deputy,* for respondent.

PETRICH, C.J.—Thomas Bowers appeals his conviction of unlawful possession of a controlled substance with intent to deliver. He contends the court erred in denying his motion to suppress fruits of a search incident to arrest, claimed to be illegal for lack of probable cause because information received from an informant did not satisfy the 2–pronged *Aguilar–Spinelli* test.[1] He also contends his Fifth Amendment right against self–incrimination was violated when, during trial, the State called attention to his post–arrest silence during its case in chief and closing argument. We reverse, holding the State lacked probable cause to make the arrest and the trial court erred in refusing to suppress the seized evidence.

On the evening of September 30, 1980, defendant was arrested outside a cafe owned by him, located on 23rd between K and L Streets in Tacoma. A search of his person produced a bottle of 25 Ritalin tablets prescribed for one Mobley. At the suppression hearing,[2] Officer Garrison, the arresting officer, described the events leading to defendant's arrest. At approximately 8:10 p.m. on September 30, Garrison telephoned a known informant who told him "Tom" was on "the corner," he was wearing blue bib over-

---

[1] *Aguilar v. Texas,* 378 U.S. 108, 12 L. Ed. 2d 723, 84 S. Ct. 1509 (1964); *Spinelli v. United States,* 393 U.S. 410, 21 L. Ed. 2d 637, 89 S. Ct. 584 (1969).

[2] For some unexplained reason, the court's findings and conclusions were not entered until approximately 10 months after the hearing and after appellant's brief had been filed with this court. Although absent assignments of error such findings are verities on appeal, our review of these findings does not support the conclusions that the police had probable cause to make the arrest. We have independently reviewed the record and are satisfied that probable cause was not established.

alls, his automobile, a Trans Am, was there, he had a quantity of Ritalin in his pocket, and he was "dealing in Ritalin." The informant provided the license plate number and the officer verified that the described car was registered to defendant.

Garrison and another officer proceeded directly to "the corner," known to them to be 23rd and L Street, between K and L. Based on prior conversations with this and other informants about who was involved in "drug dealing," during which conversations "Tom" was named and described, Garrison knew he was looking for a middle–aged black man. The officers passed the area once and did not immediately spot defendant. They proceeded to a nearby alley and from there spotted defendant,.who matched the description. The officers observed defendant for a short time, 5 to 7 minutes, then placed him under arrest.

Garrison testified that in the minutes preceding the arrest defendant was engaged in activity that, based on the officer's experience and considering the area of town, suggested drug activity. When the officers first spotted defendant he was standing on the sidewalk. They watched him talk to passengers in two separate cars. In Garrison's words, they saw him

> [approach]—at least talk to one car, squatted down, talked to the people a little bit, proceeded back up by the wall of the building. Then just before we advanced, then he proceeded out, contacted another car, and squatted down by it. This is activity that through my experience I associate with drug dealing.

It was dark and the officers did not observe anything change hands. They drove their car to the area near defendant, jumped out of the car, called out "Tom," defendant turned his head, and they placed him under arrest, and searched him. Not over 15 minutes elapsed from the time the officer received the telephone call until the arrest. It is undisputed that Ritalin had been prescribed to one Eugene Mobley the day preceding the arrest (of the 100 prescribed only 25 remained), and at the moment of arrest

defendant was crouched next to a vehicle parked on the street in which Mobley was a passenger. Defendant's defense at trial was at the moment of arrest he was merely returning the pills to Mobley who had left them at the cafe.

■ Here probable cause to arrest depends in substantial degree upon the reliability of the informant and his information.[3] The informant's "veracity" or "reliability" and "basis of knowledge" are highly relevant in determining whether the informant's tip satisfies the requirement of probable cause. However, these elements are not entirely separate and independent tests that must be satisfied in every case. We no longer require slavish adherence to the "2–pronged test" formulated by *Aguilar* and *Spinelli.* We now must consider the totality of the circumstances in our analysis to determine whether probable cause exists. Under this test the informant's veracity or the reliability of his report and the basis of his knowledge are considered as closely intertwined issues that may usefully illuminate the commonsense practical question whether "probable cause" exists. *Illinois v. Gates,* ___ U.S. ___, 76 L. Ed. 2d 527, 103 S. Ct. 2317 (1983).

While the United States Supreme Court in *Illinois v. Gates, supra,* did abandon the separate and independent status or channels of inquiry engrafted onto the "2–pronged test" of *Aguilar* and *Spinelli,* it still considers such inquiries useful along with all other factors in determining whether probable cause exists. The Court's rejection of the dispositive nature of each inquiry did not remove these inquiries as useful tools in determining whether probable cause exists. Rather the Court said at page 545:

> Instead, they are better understood as relevant considerations in the totality of circumstances analysis that traditionally has guided probable cause determinations: a deficiency in one may be compensated for, in determining

---

[3]The same test is applicable to the determination of probable cause both to arrest without a warrant and to issue a warrant. *Spinelli v. United States,* 393 U.S. at 417 n.5; *State v. Helfrich,* 33 Wn. App. 338, 656 P.2d 506 (1982); *State v. White,* 10 Wn. App. 273, 518 P.2d 245 (1973).

the overall reliability of a tip, by a strong showing as to the other, or by some other indicia of reliability.

The touchstone of our inquiry in the case before us is the reliability of the information the police officers had which indicated criminal activity by the defendant. Here, the arresting officer clearly established the credibility of his informant by stating "the informant had previously given substantial quantities of information concerning drug activity that the officer had verified by independent means." *State v. Fisher,* 96 Wn.2d 962, 639 P.2d 743, *cert. denied,* 457 U.S. 1137 (1982); *cf. State v. Woodall,* 100 Wn.2d 74, 666 P.2d 364 (1983) (mere conclusory statement that informant had "proven to be reliable" not enough to establish credibility).

▮ Where, however, the information of the defendant's criminal activity is merely in conclusory terms, such as here, credibility of the informant in the abstract will not suffice. *Nathanson v. United States,* 290 U.S. 41, 78 L. Ed. 159, 54 S. Ct. 11 (1933); *Aguilar v. Texas,* 378 U.S. 108, 12 L. Ed. 2d 723, 84 S. Ct. 1509 (1964). The officer's information from other unidentified sources that the defendant was engaged in drug activities adds very little since it too was described in conclusory terms. The officer's probable cause to arrest must be grounded on a factual basis of criminal activity and not solely on the mere conclusion of another.

An explicit recitation that the informant personally witnessed the incriminating facts might well be enough. In the instant case no such claim was made. Another indirect means of reliability could be established by corroboration of the informant's tip furnished in sufficient detail "to imply that the informant was speaking from firsthand knowledge and was not passing on an offhand remark heard at a neighborhood bar." *See generally* 1 W. LaFave, *Search and Seizure* § 3.3(e) (1978).

However, the kind of details which the courts have held elevates the information to the level of probable cause concerns matters not readily available to one not closely connected to the suspect. Most often they involve predictions

of the suspect's future actions which are not easily pre-dicted rather than a recital of more readily available facts and conditions at the time of the tip. *Illinois v. Gates, supra; Draper v. United States,* 358 U.S. 307, 3 L. Ed. 2d 327, 79 S. Ct. 329 (1959); *State v. McGee,* 15 Wn. App. 563, 550 P.2d 552 (1976); *State v. White,* 10 Wn. App. 273, 518 P.2d 245 (1973).

In the instant case the information supplied by the informant could have come from a mere passerby. The essence of the tip was that defendant dressed in certain type of clothing and his car is located on a public street and defendant is dealing in drugs. The street was in front of defendant's business establishment where one might expect him to be. This type of information did not require any type of special insider knowledge.

The tip, coupled with other information, may provide "the 'little bit more' which is needed to elevate this other information up to the level of probable cause". 1 W. LaFave § 3.3(f), at 566. *See, e.g., State v. Brooks,* 7 Wn. App. 27, 497 P.2d 946 (1972). The State contends that the officers' observation of the defendant's activities in light of their experience is enough to elevate the other information to the level of probable cause.[4] It is appropriate to interpret the observed facts in the light of the officers' experience. Here, however, all that was observed was that the defendant approached two vehicles in front of his restaurant with nothing other than verbal comments being exchanged. No explanation was given by the police officers as to why the conduct was, in their experience, peculiar to those engaged in illegal drug activities. The State having failed to estab-

---

[4]It is questionable whether the arresting officers' surveillance was for the purpose of confirming some sort of suspected criminal activity by the defendant, or merely to identify him as the person described by the informant and then arrest him. The interval of time between the tip and the arrest was only 15 minutes. At the suppression hearing, the officer described coming onto the scene and (not see-ing) "exactly who we were looking for . . ." They then proceeded to their surveil-lance position and eventually spotted the defendant. He then stated "we watched him for a short period of time until we were satisfied that this was the person that we were looking for."

lish probable cause, the trial court erred in not suppressing the evidence.

In view of our holding on the issue of probable cause, we deem it unnecessary to address defendant's other assignments of error.

Judgment reversed and remanded for further proceedings.

REED and WORSWICK, JJ., concur.