[No. 5749-6-III.  Division Three.  March 15, 1984.]

THE STATE OF WASHINGTON, *Respondent,* v. CESAR M. ADAME, *Appellant.*

*Jerry L. Sorlien,* for appellant.

*Paul A. Klasen, Jr., Prosecuting Attorney,* and *Mary Ann Brady, Deputy,* for respondent.

THOMPSON, J.—Cesar M. Adame appeals his conviction of violation of the Uniform Controlled Substances Act (one count) and possession of stolen property (two counts).

On December 28, 1982, an investigator secured a search warrant for Cesar Adame's residence. The supporting affidavit stated the investigator received information from three reliable sources that Adame possessed a large quantity of marijuana and narcotic paraphernalia plus stolen guns, stereo equipment, televisions and household items.[1]

---

[1]The affidavit provided:

"2. That my belief is based upon the following facts and circumstances:

"A. Background of officer (or other Affiant):

"Affiant has been in law enforcement for *thirteen years, to which five years were spent working in investigations, handling narcotics and bur-* glary investigations. Affiant has been involved in the narcotics field and is responsible for the arrest of over 200 narcotics related arrest[s], in my career. Affiant is currently in the investigations division for the Grant County Sheriff's department.

"B. Basic facts of crime being investigated:

"Affiant has been actively involved in narcotics investigations in the Grant county area for a period of two years. While conducting the investigations this officer has had contact with three relieable [*sic*] informants who have been responsible for the arrest and identification of numerous narcotics dealers. All three of the informants have provided this officer with information concerning Cesar M. Adame who lives at 646 Clover Dr. in Moses Lake, Washington. This officer has received information that Cesar is trading narcotics for stolen guns, t.v.'s and other valuable items that are taken from burglaries in the Moses Lake and Grant County area. Information from the informants have shown that Cesar is dealing in large quanties [*sic*] of marijuana and is dealing to students at the high school.

"C. Circumstances supporting probable cause:

"*Affiant has received information from two reliable sources that Cesar Adame has in his possession at this time a large quanity* [*sic*] of marijuana and narcotic paraphernalia. The informants advise that *Cesar also has in his possession stolen guns and stero* [*sic*] *equipment,* t.v.'s and house hold items that he trades to suspects who burglaries [*sic*] residences in the Moses Lake area and the Grant County area, for narcotics. Another informant has advised this officer that Cesar is dealing narcotics to the students at the high school and to the neighborhood people. *All three informants have been proven relieable* [*sic*] *on numerou[s] occassions* [*sic*] *and information obtained from these informants has led to the arrest of several narcotics dealers.* This officer has also received information from other informants and persons who have not proven themselves relieable [*sic*] that Cesar Adame is selling narcotics out of his residence and is dealing to students at the high school." (Italics ours.)

The search warrant was executed on the same day. Upon entering the residence, the investigator noted the strong odor of burning marijuana. Because of his belief that Adame carried knives, the officer patted Adame down for weapons. Unable to identify a large bulge in the defendant's right–hand pants pocket, the officer emptied the pocket and found a clear plastic baggie containing what appeared to be marijuana. During the 5½–hour search, 51 items of suspected stolen property were seized, 33 of which were not listed in the search warrant. The trial court denied all defendant's motions to suppress evidence and found defendant guilty on all counts.

■■ Adame first contends since the supporting affidavit stated mere conclusions, not facts, the trial court erred in failing to suppress the evidence obtained pursuant to the search warrant. The determination by a magistrate that probable cause exists should be given great weight by the reviewing court. Sufficiency is determined by whether the affidavit provides the issuing magistrate with a factual basis from which he could independently conclude that probable cause existed, *State v. Fagundes,* 26 Wn. App. 477, 614 P.2d 198, 625 P.2d 179 (1980), and any doubts should be resolved in favor of the warrant. *United States v. Ventresca,* 380 U.S. 102, 13 L. Ed. 2d 684, 85 S. Ct. 741 (1965).

Recently, the United States Supreme Court adopted a "totality of circumstances" test. *Illinois v. Gates,* \_\_ U.S. \_\_, 76 L. Ed. 2d 527, 103 S. Ct. 2317 (1983). In *Gates,* the "two–pronged" *Aguilar–Spinelli*[2] test ("basis of knowledge" plus "veracity" or "reliability") was held not to consist of separate and independent requirements. Instead, the factors of knowledge and reliability are now "closely intertwined issues that may usefully illuminate the common-sense, practical question whether there is 'probable cause'. . ." for issuance of a search warrant. *Illinois v. Gates,* 103 S. Ct. at 2328. Washington recognized this test

[2]*Aguilar v. Texas,* 378 U.S. 108, 12 L. Ed. 2d 723, 84 S. Ct. 1509 (1964); *Spinelli v. United States,* 393 U.S. 410, 21 L. Ed. 2d 637, 89 S. Ct. 584 (1969).

in *State v. Woodall,* 100 Wn.2d 74, 78 n.2, 666 P.2d 364 (1983); *see also State v. Bowers,* 36 Wn. App. 119, 672 P.2d 753 (1983); *accord, State v. Riley,* 34 Wn. App. 529, 663 P.2d 145 (1983) (the magistrate should consider "all the facts and circumstances").

Here, the affidavit in its entirety established probable cause under the "totality of circumstances" standard. While under the "two–prong" test, the affidavit was arguably deficient with respect to facts showing the informants' personal knowledge of the illegal activity, the "deficiency" of this prong "may be compensated for, in determining the overall reliability of a tip, by a strong showing as to the other [prong], or by some other indicia of reliability." *State v. Bowers, supra* at 122–23 (quoting from *Gates,* 76 L. Ed. 2d at 545). Where a particular informant is known for "unusual reliability" in predicting "certain types of criminal activities in a locality . . .", his failure "to thoroughly set forth the basis of his knowledge surely should not . . ." bar a finding of probable cause. *Gates,* 103 S. Ct. at 2329.

The affidavit reveals a "strong showing" as to the veracity prong by establishing the reliability of not just one, but three informants who had provided the affiant accurate information leading to narcotics arrests on numerous earlier occasions. The information provided by the other informants, even though they had not proven themselves reliable, gave added force to the information provided by the three reliable informants. The affidavit provided Adame's address, allowing the magistrate to conclude the stolen property and contraband was located at that residence. The affidavit sets forth the particular crimes occurring and describes specific contraband in defendant's possession "*at that time*". Therefore, "the magistrate had a reference point by which to determine the current status of the information". *State v. Partin,* 88 Wn.2d 899, 904–05, 567 P.2d 1136 (1977). Further, the affiant's statement is not vague. That is, he states he has received information from the proven informants and other persons rather than has "cause to suspect". *See Nathanson v. United States,* 290

U.S. 41, 78 L. Ed. 159, 54 S. Ct. 11 (1933) (affiant's statement he has "cause to suspect" is inadequate to establish probable cause). Finally, the affidavit, given by an experienced narcotics officer, was current, and the warrant was issued within 3 hours from the receipt of the affidavit. While the document was not a model of clarity, the realities are that such papers often must be drafted with haste. The magistrate was accordingly entitled to draw reasonable inferences from all facts and circumstances of the probability the search warrant would reveal evidence of a crime.[3]

Adame next contends the officer exceeded the scope of a pat–down search for weapons when he seized contraband.

A search incident to an arrest can be made only after a lawful arrest. *Chimel v. California,* 395 U.S. 752, 23 L. Ed. 2d 685, 89 S. Ct. 2034 (1969). Here, Adame had not been arrested at the time of the search. Thus, the discovery of contraband cannot be justified as a search incident to an arrest.

An officer is permitted to frisk an individual for weapons when reasonable grounds exist that would indicate the person is armed and dangerous. *Terry v. Ohio,* 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868 (1968). The officer must be able "to point to particular facts from which he reasonably inferred that the individual was armed and dangerous". (Italics omitted.) *State v. Broadnax,* 98 Wn.2d 289, 294, 654 P.2d 96 (1982) (quoting *Sibron v. New York,* 392 U.S. 40, 64, 20 L. Ed. 2d 917, 88 S. Ct. 1889 (1968)). Here,

---

[3]The Supreme Court recently emphasized that in construing article 1, section 7 of our state constitution, analysis begins with looking to the law of search and seizure at the time our state constitution was adopted, and continues with "examin[ing] the evolution of state court analysis" with a view of federal decisions "to discern possible trends". *State v. Ringer,* 100 Wn.2d 686, 690, 674 P.2d 1240 (1983). With *Ringer* in mind, we reach the same result in this case. In construing the "necessarily implie[d]" reasonableness requirement in the test for issuance of a search warrant, the standard has long been held to be whether "the documents or testimony supporting the warrant give a fair–minded, independent judicial officer, on *considering all of the facts and circumstances* set before him on oath or affirmation, good reason to issue the warrant". (Italics ours.) *State v. Patterson,* 83 Wn.2d 49, 52, 515 P.2d 496 (1973).

the stipulated facts reveal the officer patted down Cesar Adame for weapons because of his belief that Adame carried knives. He was unable to identify a large bulge in Adame's right front pants pocket and did not know but what it might be a weapon.

The officer was entitled to frisk Adame under then existing circumstances to satisfy himself the bulge was not a weapon. The patdown was for the protection of the officer and was not a search for contraband. In identifying the pocket bulge, a clear baggie of marijuana was found. Thus, the presence of contraband was obvious. The seizure of the marijuana did not exceed the permissible scope of the patdown search.

Finally, Adame contends evidence seized not described in the search warrant should have been suppressed. Contraband or stolen property discovered during a search for other specific items listed in a valid warrant may be seized under the plain view doctrine so long as certain criteria are met. *State v. Daugherty,* 94 Wn.2d 263, 267, 616 P.2d 649 (1980), *cert. denied,* 450 U.S. 958 (1981); *State v. Henry,* 36 Wn. App. 530, 676 P.2d 521 (1984); *State v. Legas,* 20 Wn. App. 535, 581 P.2d 172 (1978); *State v. Johnson,* 17 Wn. App. 153, 561 P.2d 701 (1977); *State v. Proctor,* 12 Wn. App. 274, 529 P.2d 472 (1974); *Coolidge v. New Hampshire,* 403 U.S. 443, 29 L. Ed. 2d 564, 91 S. Ct. 2022 (1971). The doctrine will justify seizure of property if (1) there is a prior justification for the intrusion; we have herein previously held the officers were searching the home pursuant to a valid warrant. Therefore, the intrusion was justified. (2) The incriminating evidence must have been discovered inadvertently. The presence of numerous items of personal property intermingled with items specifically described in the warrant could hardly be ignored. They were discovered inadvertently within the meaning of the second requirement. They were not looking for it, but it was there to be seen. (3) The officers must know immediately that they have incriminating evidence before them. Prior to entering the home, the officers had knowledge that

the defendant was engaged in a large–scale operation involving the acquisition and disposition of stolen property and contraband. Upon entering the home they were confronted by a large accumulation of personal property in addition to that which was specifically described in the warrant. Some items were similar to those described; some were incongruously scattered throughout the home in numbers beyond those normally found in a household. Some were initialed, some had obliterated ID numbers. Taking all these factors into consideration, the officers were justified in believing they had incriminating evidence before them. In fact, they could very well have concluded they were in a "den of thieves" as characterized in *State v. Legas, supra.* The seizure of the property not listed in the warrant was proper.

We affirm.

MUNSON, C.J., and MCINTURFF, J., concur.

Remanded by Supreme Court to the Court of Appeals November 5, 1984. See 39 Wn. App. 574.