STATE of Missouri, (Plaintiff) Respondent,

v.

Everett STACY, (Defendant) Appellant.

No. 30844.

St. Louis Court of Appeals.

Missouri.

March 20, 1962.

Robert A. McIlrath, Flat River, for appellant.

Roy G. Cooper, Pros. Atty., Madison County, Fredericktown, for respondent.

SAM C. BLAIR, Special Judge.

Misdemeanor. Everett Stacy was found guilty by a jury of wilfully and maliciously killing a dumb animal, Janie, a Seeing-Eye dog owned by John J. Hess, a sightless man. (Section 563.670, V.A.M.S.) Stacy has always admitted, out of court and in court on the stand, that he shot and killed the dog.

Various assignments exist in the motion for a new trial, but only two are presented by the points relied on and by the brief. Questioned by Stacy are (1) the sufficiency of the evidence to warrant the verdict and judgment and (2) the propriety of the argument of the prosecuting attorney to the jury.

During oral argument in this court, we expressed some doubt that the evidence was sufficient to establish the corpus delicti of this offense independently of Stacy's admissions and statements. Study of this record dispels this doubt. The corpus delicti in this instance requires some substantial independent evidence that the dog "[was] found dead or fatally wounded, with evidence of having been shot, and not shot for any lawful purpose." State v. Schyhart, Mo.Sup., 199 S.W. 205–211.

Viewing the entire record we have concluded that there was adequate evidence of

the corpus delicti and that Stacy shot the dog for no lawful purpose.

John J. Hess, the dog's owner, testified that he obtained the dog from the International Guiding Eye School, Inc., Burbank, California, and that he had owned the dog from May 6, 1958, until December 26, 1959, the day Stacy killed it. He had brought the dog home with him in a commercial airplane, unmuzzled and among the passengers, from Burbank, California, to St. Louis, Missouri, without incident. He had never had any trouble controlling the dog. It was a "gentle" female, approximately three and one-half years of age, a German Shepherd. Certainly this was some substantial evidence of the character and tendency of the dog from which the jury could conclude, on the whole record, as will appear, that it was not a dog likely to exhibit hostility that would convince Stacy he had to kill it in self-defense. For Stacy's claim was that he killed the dog in self-defense.

■ On the question of the adequacy of the proof to establish the corpus delicti the applicable precedents are clear. Full proof of the corpus delicti, independent of confessions, *or* statements made by a defendant, is not required, and if there is evidence of corroborating circumstances, direct or circumstantial, even though slight, tending to prove the corpus delicti, which correspond with circumstances related in the confession *or* statements, all of the circumstances, taken together, including the confession *or* statements, may be considered in determining whether the corpus delicti was sufficiently established and, in the final analysis, whether the offense charged is supported by substantial evidence. City of St. Louis v. Washington, Mo.App., 223 S.W.2d 858; City of St. Louis v. Simon, Mo.App., 223 S.W.2d 864; State v. McQuinn, 361 Mo. 631, 235 S.W.2d 396; State v. Hardy, 365 Mo. 107, 276 S.W.2d 90; State v. Kollenborn, Mo., 304 S.W.2d 855. We look to Stacy's relevant and incriminating statements to ascertain whether there is corroboration of the independent proof of the corpus delicti and substantial evidence of the offense itself. In substance the incriminating statements of Stacy were:

Stacy had been hunting. He met the dog on a country road. He thought it was a wolf at first. He "just kept walking toward it." The dog turned and went back up the road about seventy-five or a hundred yards, over a rise and out of sight. Stacy had not done anything to make the dog turn and go away. By this time he had recognized the animal to be a dog and not a wolf. He then walked to the top of the rise and saw the dog again. It turned and came toward him. It had its head down and its ears back. He "stomped" his foot, but did not shout, and the dog stopped. It laid down, ears back, and wagged its tail. It did not bark or growl or snarl or bristle its hair. He shot it with a 12-gauge shotgun and dragged it off the road, over a hill, through the brush, about ten steps. On the day of the shooting, he stated the dog was twenty-five steps from him when he shot it. A few days later, he claimed it was only twenty-five feet.

On this record we have a "gentle," Seeing-Eye dog. It had remained, from Burbank, California, to St. Louis, Missouri, unmuzzled among the passengers, without incident. No trouble had ever been experienced in controlling it. On both encounters with Stacy, according to his own statements, it is clear that the dog exhibited no slightest sign of hostility, only what all humans recognize as dog friendliness and dog curiosity, which menaces no one. And while it was doing so, Stacy shot it.

■ We have not overlooked noticing that Stacy made other and different statements, on and off the stand, of an exculpatory nature and that he claimed he shot the dog because he was afraid of it and only in self-defense. On this appeal it is now not of consequence that he did so. This cause must be ruled on the evidence favorable to the State. All of the circumstances surrounding the shooting, together with

Stacy's exculpatory statements, were before the jury to be evaluated. The jury was fully instructed on his defense. The jury rejected this defense. The jury had the right to believe or disbelieve, and to reject, those parts of Stacy's statements which tended to exculpate him, including his assertion that he killed the dog in self-defense, just as a jury is always privileged to believe or to disbelieve any or all parts of an accused's statements, after it has, of course, considered all of his statements in their entirety and the probability of their truth or falsity, and has taken into account always all of the circumstances and facts in the case. This is elementary. State v. Tourville, Mo.Sup., 295 S.W.2d 1, certiorari denied 352 U.S. 1018, 77 S.Ct. 575, 1 L.Ed.2d 554; Bower v. State, 5 Mo. 364, 32 Am.Dec. 325; State v. Hollenscheit, 61 Mo. 302.

We are of the opinion, and so hold, that the corpus delicti of this offense, that the dog was shot for no lawful purpose, was adequately established by evidence independent of Stacy's statements, aided by his consistent corroborating statements, and that there was, furthermore, adequate substantial evidence to undergird the verdict of guilty.

■ Stacy argues that the prosecuting attorney told the jury in argument that the officers, the sheriff and the highway patrolman, were not "satisfied" with Stacy's answers to questions they put to him. The contention is made that this argument told the jury it ought to find Stacy guilty because the officers disbelieved his exculpatory statements and claim of self-defense. We have examined all the prosecuting attorney said and the record wholly fails to support Stacy's theory.

■ On the other hand, in arguing the case to the jury, the prosecuting attorney went outside the record and quoted portions of the now historic "Eulogy to a Dog" by Senator George Graham Vest.[1] It is noteworthy that the propriety of the argument made by Senator Vest in Burden v. Hornsby, 50 Mo. 238, was not questioned when the case went to the Supreme Court of Missouri, and the cause was ruled on entirely unrelated grounds.

■ We think the argument of the prosecuting attorney exceeded proper bounds, for there was no slightest evidence in the record that Janie possessed the attributes of the dog described in Senator Vest's eulogy. We acknowledge that literary allusions are permissible in arguments to juries. "The largest and most liberal freedom of speech is allowed an attorney in the conduct of his client's cause. 'The range of discussion is wide. * * * In his address to the jury it is his privilege to descant upon the facts proved or admitted in the pleadings; * * *. His illustrations may be as various as the resources of his genius; his argumentation as full and profound as learning can make it; and he may, if he

---

1. "The best friend a man has in the world may turn against him and become his enemy. His son and daughter that he has reared with loving care may prove ungrateful. The money a man has he may lose. It flies away from him, perhaps, when he needs it most. A man's reputation may be sacrificed in a moment of ill-considered action. The one absolutely unselfish friend that a man can have in this selfish world, the one that never deserts him, the one that never proves ungrateful or treacherous, is his dog. A man's dog stands by him in prosperity and poverty, in health and in sickness. He will kiss the hand that has no food to offer; he will lick the wounds and

sores that come in encounter with the roughness of the world. When all other friends desert, he remains. If fortune drives the master forth an outcast in the world, friendless and homeless, the faithful dog asks no higher privilege than that of accompanying him, to guard against danger, to fight his enemies; and when the last scene of all comes, and death takes the master in its embrace, and his body is laid away, no matter if all other friends pursue their way, there by the graveside will the noble dog be found, his head between his paws, his eyes sad, but open in watchfulness, faithful and true even in death."

will, give play to his wit, or wings to his imagination. *To this freedom of speech, however, there are some limitations.* * * So, too, what a counsel says or does in the argument of a case must be pertinent to the matter on trial before the jury, and he takes the hazard of its not being so. Now, statements of facts not proved, and comments thereon, are outside of the case. They stand legally irrelevant to the matter in question, and are therefore not pertinent. If not pertinent, they are not within the privilege of counsel.' * * * Attorneys sometimes, with a persistency worthy of a better cause, press, during the trial, into the record, much that is objectionable; and, as soon as they get verdicts, they seem to awake to a realization of the fact that they have performed works of supererogation, and have done more to win their causes than was required of them, or more than was necessary, and, as an excuse for this excess of energy, insist that it had no prejudicial effect, and no harm resulted from it." Evans v. Town of Trenton, 112 Mo. 390, 20 S.W. 614, 1. c. 616. (Emphasis supplied.) The argument put forward by the state here is to the same effect, but we are convinced we must reject it.

"Nothing should be done in trying a person upon a criminal charge that will have the effect of inflaming the minds of the jurors on trying the question of guilt or the punishment to be assessed. All persons, the guilty as well as the innocent, have an equal standing before the law and must receive the same fair treatment at the hands of the court and the prosecuting officers provided for the enforcement of the law." State v. Nicholson, Mo.App., 7 S.W.2d 375, 1.c. 379. Certainly this is true in the instant case where such potentialities for prejudice and passion are inherent in the charge that the accused killed a "gentle" Seeing-Eye dog belonging to a sightless man. One has only to read the long quotation from Senator Vest's eulogy and to compare it with the actual record in this case to realize vividly that no one claimed for Janie the attributes ascr'bed to Old Drum in Senator Vest's eulogy. When there is added to this the final peroration of the prosecuting attorney, "I merely request that you judge this matter with your *hearts* as well as your heads," we believe that what he quoted and finally said created an atmosphere designed to lead the jury to decide the case on its emotions rather than by reason and with objectivity, a course at war with unbiased justice, and that the argument, therefore, was unquestionably prejudicial and requires reversal and a new trial. 9 Mo.Dig., Criminal Law, ☞719; 27 Mo.Dig., Trial, ☞120.

It is so ordered.

RUDDY, Acting P. J., and WOLFE, J., concur.