[No. 39875.   Department Two.   December 19, 1968.]

THE STATE OF WASHINGTON, *Respondent,* v. JASPER LEROY
FLEETWOOD, *Appellant.**

*Robert W. Garver,* for appellant.

*L. Edward Brown* and *Paul B. Fournier,* for respondent.

HILL, J.—This might well be known as the "Great Grays
Harbor Colloquium." Of the 485 pages in the statement of
facts, approximately 200 are devoted to colloquy.

The question presented to the jury was whether the de-
fendant, Jasper Leroy Fleetwood, was in Olympia and adja-
cent environs (Thurston County) on the afternoon of Aug-
ust 11, 1966, trying to buy a pest extermination business, or
whether he was 28 miles away in Elma (Grays Harbor
County) assaulting and robbing Beulah Taylor, an 87-
year-old woman.

The state, in support of the latter hypothesis, presented
two witnesses who identified him positively as having been
in Grays Harbor County on that day: Mrs. Thelma Driggs,
a public school teacher, who testified that the defendant
was in her summer home at Copalis Beach in Grays Harbor
County (some 45 miles west and north of Elma) on August
11, 1966. She further testified that he told her he was an

*Reported in 448 P.2d 502.

FBI agent; and that he also told her that the man with him was a Mr. Bowman, who was an entomologist, and that they were investigating the claimed defective work of an insect exterminator who had done work for her. She fixed the time they were there as "before 12:00, around 12:00 [noon]." She had made a note of the license number of the car in which the two men were traveling, *i.e.*, EBD 858 (Oregon). A car bearing the same license number was at Mr. Fleetwood's home near Woodburn, Oregon when he was arrested. His contention is that someone unknown to him had taken his car from where he had parked it in Tumwater, Washington.

Mrs. Beulah B. Taylor, a widow, the victim of the robbery and assault in Elma, likewise positively identified the defendant. She testified that when he approached her outside of her home, he represented himself as an FBI agent, and stated that the people who had done some termite extermination work for her several weeks before had overcharged her and that he would get some of the money back for her. (The similarity of the story told to Mrs. Driggs will be noted.) After he gained admission into the house, he assaulted and robbed her, taking four $20 bills, a $10 bill, and forcing her to write and give to him a personal check for $250 payable to bearer. She was uncertain as to the time he arrived, but said she was pretty sure it was as late as 1 p.m. when he came. (Inferentially, it could have been considerably later. She testified that after the defendant left, she went to a neighbor [Mrs. Westenburg] for help. A doctor was called, and he testified that his house call was at 4:20 p.m.; a laceration behind Mrs. Taylor's left ear was still bleeding at the time of his examination.)

The defense testimony, as to the defendant's presence in the Olympia-Washington area on August 11, 1966, comes from five men who journeyed in three different cars from the state of Oregon to the "Oregon Trail" (a restaurant and cocktail lounge) in Tumwater, adjacent to Olympia, on the morning of August 11, 1966. The trip was made because of their interest in the defendant's possible purchase of an exterminator business in Olympia.

The presence of defendant's automobile at Copalis Beach was explained by saying that someone took it without his permission at some time prior to 11:20 or 11:30 a.m. and then returned it by 5:30 p.m. that evening. There is no evidence that any complaint was ever made to the authorities that defendant's car had been taken.

Fleetwood placed himself at eight different locations in the Olympia area on that day—twice at the home of a Mr. Greer from whom he expected to purchase the exterminator business (Mr. Greer was not home, but there was testimony that the defendant talked each time with Mrs. Greer); four times at the Oregon Trail, once each at The Spar and The Broiler (restaurant-cocktail lounges); and once at Olympia Brewing Company. The Oregon Trail was the rendezvous from which the visiting Oregonians operated. Significantly, neither Mrs. Greer nor any one connected with any of the four establishments mentioned was called to testify that they had seen or talked to the defendant on that date. (A representative of the Olympia Brewing Company testified that one of the party had signed as part of a large group making a tour of the brewery, but the defendant was not identified as a member of that group except by members of the claque from Oregon.)

The defendant denied his presence at Copalis Beach or Elma, and further denied knowing any one by the name of Bowman.

On rebuttal, a deputy sheriff from Marion County, Oregon, testified that at the time he arrested the defendant on August 13, 1966, there was a man in the defendant's home who gave the name of Roy Bowman. A defense witness testified that a man by that name had been at the Oregon Trail on August 11, 1966.

The jury accepted the testimony of the state's witnesses; disbelieved the alibi witnesses, and found the defendant guilty. The defendant appeals from the judgment and sentence entered upon the verdict of the jury.

■ Testimony of the arresting officers was offered in rebuttal of the appellant's case. This testimony is assailed as

being prejudicially erroneous and not proper rebuttal since it formed part of the state's case. Concededly, it was prejudicial to the appellant in the sense that the state's evidence is supposed to be: it squarely rebutted the statement of the appellant that he did not know anybody by the name of Bowman. Had the appellant not made that disclaimer, the deputy sheriff could not have testified on this matter in rebuttal. The remainder of the officers' testimony merely explained why they were at the appellant's home on August 13, 1966.

Appellant complains that one of the officers searched his car at the time of the arrest. The officer testified that the appellant gave his permission. In any event, nothing of an incriminating nature was found in the car.

Another assignment of error relates to testimony of Mrs. Thelma Driggs. The contention is that relevant portion of her testimony could have been presented in "2 minutes" and that her long examination, extending through 27 pages (pages 27 to 53 inclusive) of the statement of facts, was merely to prejudice the appellant. Her testimony was relevant to establish that the appellant was in Grays Harbor County on August 11, and to show that he claimed to be an FBI agent, just as he did to Mrs. Taylor; to show that appellant's car was in Grays Harbor County at the time; and to establish that a Mr. Bowman was with him. (The latter would not have been particularly important had not the appellant disclaimed knowing anyone by the name of Bowman.)

The length of Mrs. Driggs' testimony is greatly exaggerated by the appellant. Of the 27 pages, 16 were entirely taken up with colloquy of counsel; the other 11 contained only 158 lines of questions and answers, with slightly more than half thereof being devoted to colloquy. The statements actually made by Mrs. Driggs covered 88 lines or less than 3 pages of the record. Counsel's estimate of only 2 minutes being required to establish the relevant facts, to which we have alluded, seems to be on the minimal side; but her actual testimony probably did not exceed 10 or 15 minutes —and all of it on very relevant matters, except for one

statement which the trial court instructed the jury to disregard.

The third assignment of error relates to the argument of the prosecuting attorney. The assignment of error states that the argument of the prosecuting attorney—wherein he (a) emphasized the testimony of Mrs. Driggs' about the appellant being a member of the FBI; and (b) emphasized that Mrs. Taylor, an 87-year-old woman, had been assaulted—so inflamed the jury that a fair trial was impossible.

We find nothing objectionable in the argument as made. Mrs. Driggs' and Mrs. Taylor's testimony substantiated that the appellant claimed to be an FBI agent. Mrs. Taylor *was* 87 years old, and she *did* sustain a brutal beating. A prosecutor is not muted because the acts committed arouse natural indignation.

At no time during the argument of the prosecuting attorney was any objection made. After the argument was completed, there was a motion for a mistrial because of reference to the appellant's representation of himself as an FBI agent.

We see no error in the argument as made; but if there was, it was not of such a nature as to leave a mistrial the only remedy available, which was the only relief requested.

We have limited this opinion to a consideration of the three assignments of error set out in the brief. The discursive and wide-ranging argument in the brief covers other facets of the case which have no relation to the errors assigned. Reference is made, with no error assigned, concerning the admission of certain articles in evidence (a hat and a glass tumbler), and the sending of the jury back to reconsider the verdict (the jury having found the appellant guilty of grand larceny, in addition to the robbery and the assault which were charged). We find no merit in the errors argued but not assigned.

The conviction of the appellant is affirmed.

FINLEY, C. J., HUNTER and HAMILTON, JJ., and STAFFORD, J. Pro Tem, concur.

February 21, 1969. Petition for rehearing denied.