[No. 155-40840-2.   Division Two.   December 22, 1970.]

THE STATE OF WASHINGTON, *Respondent,* v. RICHARD J. RANICKE, *Appellant.*

*August F. Hahn,* for appellant.

*Anton J. Miller, Prosecuting Attorney,* for respondent.

ARMSTRONG, C. J.—Defendant Richard Ranicke appeals from a jury conviction of petit larceny. The defendant was originally charged with the crimes of grand larceny and second-degree burglary. The trial court reduced the charge of grand larceny to petit larceny because there was insufficient evidence to establish that the property taken was of the value of $75. The jury found the defendant not guilty of burglary and guilty of petit larceny.

The defendant, Richard J. Ranicke, was a traveling salesman for the American Hospital Supply Company of Seattle. His travel schedule usually brought him into Pacific County on every other Tuesday.

During the early part of 1968, the local authorities became concerned over a series of thefts in the Willapa Harbor Hospital of South Bend and the Riverview Clinic of Raymond. After unsuccessful attempts to trap a suspect, who was first believed to be an employee of the hospital or clinic, attention was directed to Mr. Ranicke. It appeared that all the previous thefts had occurred on Tuesdays, extending over a period of several months.

The South Bend Chief of Police, Gerald R. Ashley, planned to stake out the doctors' lounge at the Willapa Harbor Hospital in the hope of catching Mr. Ranicke. Fifty-six dollars in marked currency was placed in the wallet of Dr. Bussabarger, who had over $200 stolen from his locker on a prior Tuesday. Chief Ashley hid in the shower stall in the doctors' lounge, from where he could observe any suspect going to the lockers. A sign on the door of the lounge read "For Doctors Only".

The defendant was seen entering the doctors' lounge and Chief Ashley testified that three locker doors were opened. The defendant removed a wallet from Dr. Bussabarger's locker. The defendant then turned around so that his back was to the shower stall. At this time Chief Ashley came out of the shower stall and placed the defendant under arrest. Mr. Ranicke had not removed any currency from the wallet, but at that time he offered no explanation of why he had entered the doctors' lounge or the lockers.

Numerous witnesses testified as to previous thefts from the hospital and clinic, most of which allegedly had occurred on a Tuesday when Mr. Ranicke was in town. At the time the first witness testified to Tuesday thefts defendant's attorney objected: "This is going beyond the issues in the charge in the information". The objection was overruled. When the next similar objection was made the jury was excused and the trial court explained that the facts illustrate the possibility of a pattern which is admissible. The trial judge obviously held the evidence admissible for the purpose of showing a common scheme or plan which might relate to the defendant's intent or the absence of mistake at the time of his apprehension for the theft of the wallet.[1] Thereafter, defense counsel made no objection on the basis of relevancy to the testimony of the other witnesses who testified as to prior thefts. Four witnesses testified to prior thefts on Tuesdays, and two witnesses testified to prior thefts but did not recall the day of the week on which the thefts occurred.

Mr. Ranicke offered an explanation of his conduct for the first time at the trial. He testified that he entered the doctors' lounge to leave some medical literature for Dr. Bussabarger and was attempting to locate the doctor's locker. Chief Ashley had previously testified that at the time Mr. Ranicke was apprehended he had medical literature in his hand as well as Dr. Bussabarger's wallet. After a 4-day trial the jury found the defendant guilty of petit larceny and not guilty of burglary.

On appeal the defendant raises two assignments of error:

---

[1] The trial court gave the jury an adequate cautionary instruction:

"Evidence has been received as to other thefts claimed to have occurred at the Willapa Harbor Hospital or New Riverview Clinic at times previous to the alleged theft charged in the Information.

"This evidence does not establish that the defendant did commit those other alleged thefts. This evidence was admitted solely for the purpose of showing a possible scheme or plan which might relate to the defendant's intent or of the absence of mistake as to his actions of May 28, 1968, and to show a reason for the presence of the police at the hospital on that date, and is not to be considered by you for any other purpose."

(1) the trial court erred in admitting evidence of other offenses for which the defendant was not charged and which were not connected to the defendant; and (2) the trial court erred in not granting a new trial for misconduct of the prosecuting attorney committed in closing argument to the jury.

Turning first to the contention that the trial court erred in admitting evidence of other thefts, we find this case unusual in that the prior thefts were not linked to the defendant except by the coincidence of his presence at the clinic or the hospital at the time the thefts occurred.

■ The general rule stated in *State v. Goebel*, 40 Wn.2d 18, 21, 240 P.2d 251 (1952), is that a defendant must be tried for the offenses charged in the information, and evidence of unrelated crimes may not be admitted unless certain exceptions exist:

> These exceptions are to show (1) motive, (2) intent, (3) the absence of accident or mistake, (4) a common scheme or plan, or (5) identity. This list of exceptions is not necessarily exclusive, the true test being whether the evidence as to other offenses is relevant and necessary to prove an essential ingredient of the crime charged. *State v. Lew*, 26 Wn. (2d) 394, 174 P. (2d) 291.

■■ Whether testimony is relevant is within the discretion of the trial court. There are no precise rules for the determination of relevancy. Each case depends upon its own circumstances. All facts are admissible in evidence which afford reasonable inferences or throw any light upon the contested matter. Relevancy means the logical relation between the facts in question and the contested matter. *Chase v. Beard*, 55 Wn.2d 58, 346 P.2d 315 (1959); *State v. Schock*, 41 Wn.2d 572, 250 P.2d 516 (1952).

■ Any competent evidence which logically tends to prove a defendant's connection with a crime is material. Relevant and material evidence is admissible. Its cogency and the degree to which it sheds light upon the facts in issue become matters of the weight given the evidence by the jury. *State v. Gersvold*, 66 Wn.2d 900, 406 P.2d 318 (1965).

Evidence of other unrelated crimes should not be admitted, however, where it is not essential to the establishment of the state's case, even though such evidence falls within the exceptions to the rule that unrelated crimes are generally not admissible. Furthermore, it is not admissible when the trial court is convinced that its effect would be to generate heat instead of diffusing light. In other words, is its probative effect outweighed by its highly prejudicial effect? *State v. Goebel*, 36 Wn.2d 367, 218 P.2d 300 (1950).[2]

We hold that the trial judge did not abuse his discretion in permitting witnesses to testify to prior thefts which occurred on the days defendant was making his calls at the hospital and clinic. This evidence was relevant and material. The trial judge could reasonably find that it was necessary to show a common scheme or plan to establish that defendant did in fact intend to steal money rather than leave literature in the doctor's pocket.

Evidence of thefts not definitely linked to the Tuesdays defendant was in the community should not have been admitted. In fairness to the trial judge we note that no objection based upon lack of relevancy was made to the evidence of thefts that did not definitely occur on the Tuesdays defendant called at the hospital.

Also received without objection was evidence that the thefts terminated after the defendant's apprehension. This evidence is subject to two inferences: (1) that after defendant was apprehended he was not in a position to repeat thefts from the clinic or hospital, and (2) that anyone who had committed thefts would terminate his activities after the apprehension and arrest of someone else. We believe that one inference would cancel the other and the evidence should not have been admitted.

We need not decide whether it was reversible error to admit testimony of thefts which were not definitely linked to the Tuesdays the defendant called at the hospital, or the

---

[2]For a comprehensive analysis of Washington cases which have considered the admission of evidence of other crimes to show a common scheme or plan, etc., see *State v. Whalon*, 1 Wn. App. 785, 464 P.2d 730 (1970).

termination of the thefts after defendant's apprehension, because defendant's counsel did not continue to object after the court's definitive ruling. There are other grounds that require a reversal.

We turn now to defendant's contention that the trial court erred in not granting a new trial for misconduct of the prosecuting attorney committed in closing argument to the jury.

Several verbatim excerpts from the argument of the former prosecuting attorney of Pacific County[3] demonstrate the nature of the misconduct which requires reversal of this case.

I ask you to firmly fix in your mind that the defendant in his [*sic*] case is Richard Ranicke. Please don't turn against me. *We could have gone on with this case for probably 2 weeks had I presented all of the evidence in detail that points toward the defendant, Richard Ranicke*

. . .

In answer to counsel's question, "Why did we not call Dr. Proffitt?" We could have called Dr. Proffitt. We could have called numerous people. *We could have called 200 witnesses here.*

(Italics ours.)

A proper objection was made to these remarks, both at trial and in the motion for a new trial.

■  Although prosecuting attorneys will be permitted a reasonable latitude in argumentative deduction from the evidence presented at trial, a reversal is justified if the prosecuting attorney makes prejudicial statements which are not supported by the evidence. A prosecuting attorney is a quasi-judicial officer whose duty is to see that a defendant in a criminal prosecution is given a fair trial. *State v. Rose*, 62 Wn.2d 309, 382 P.2d 513 (1963).

The remarks of the prosecuting attorney in this case were highly prejudicial in view of the testimony presented at the trial. Most of that testimony related to prior thefts

---

[3]The case was presented on the appeal by the successor in office of the prosecuting attorney who made the argument in question.

898

from the hospital on days when defendant was alleged to be making his business calls at the hospital. The only inference which the jury could reasonably get from the intemperate and unjustified statements was that the prosecuting attorney could have called 200 witnesses and most of them would have testified to other thefts. The reference to extending the case "for probably 2 weeks" leads to the same inference.

Although the trial judge repeatedly cautioned the prosecuting attorney to keep within the record, the inflammatory and misleading effects of the statements were highly prejudicial. We deem it to be reversible error.

Judgment reversed. The cause is remanded for a new trial.

PEARSON and PETRIE, JJ., concur.