[No. 6074-4-II. Division Two. November 6, 1984.]

THE STATE OF WASHINGTON, *Respondent*, v. BERT D. CLAFLIN, *Appellant*.

848

*Bert D. Claflin,* pro se, and *Steven W. Thayer,* for appellant.

*Arthur D. Curtis, Prosecuting Attorney,* and *James M. Peters, Deputy,* for respondent.

REED, J.—Bert Claflin appeals his convictions on multiple counts of rape, assault, and indecent liberties[1] and one count of tampering with a witness. We reverse and remand for a new trial on all counts.

During the summer of 1981, Clark County Deputy Sheriff Sharon Krause acquired information that Bert Claflin for many years had been sexually molesting minor girls and was in possession of nude photographs of one of the victims. Two complainants told Krause that approximately a month earlier each had been sexually abused in Claflin's car and "wiped off" with rags and paper towels. A warrant was obtained to search Claflin's house and "premises" for

---

[1]The amended information charged two counts of forcible rape; one count of statutory rape; one count of second degree assault; five counts of indecent liberties; and one count of tampering.

the photographs, but a search of his dwelling revealed only ordinary pictures of the girls. Deputy Krause then searched the defendant's car, which was parked on his property, and noticed that its floor was covered with rags. Recalling her conversation with the two victims, the deputy seized several towels and rags. Examination of these items disclosed pubic hair and traces of semen similar to specimens from Claflin, and vaginal secretions similar to samples from the two girls.

After his arrest for rape and indecent liberties, and based on information that Claflin offered another complainant money if she would change her story, a charge of tampering with a witness was added.

At trial the hair, rags, towels and ordinary photographs were introduced. To rebut Claflin's efforts to discredit the complaining witnesses and over his objection, the State introduced the testimony of the father of two of the youngest girls and of a social worker. During closing argument the prosecutor, again over objection, read a poem by an anonymous rape victim to show "most poignantly" how one of Claflin's victims "probably felt." Defendant's motion for a mistrial was denied and the defendant was convicted on all counts.

Claflin first claims that he was denied due process of law by particular instances of juror and prosecutorial misconduct. The facts supporting the alleged wrongdoing are not part of the record but instead appear in affidavits attached to defendant's briefs. Accordingly, they will not be considered on appeal. *State v. Murphy,* 35 Wn. App. 658, 662, 669 P.2d 891 (1983), *review denied,* 100 Wn.2d 1034 (1984); *State v. Armstead,* 13 Wn. App. 59, 65–66, 533 P.2d 147 (1975).

Claflin next argues that the State's closing argument appealed to the prejudice and passions of the jury and assumed facts not in evidence. We agree.[2] Although refer-

---

[2]The State argues the error was not preserved because Claflin's attorney failed to seek a curative instruction *in addition* to his objection and motion for mistrial. However *either* an objection or a requested instruction is sufficient to

ence to the heinous nature of a crime and its effect on the victim can be proper argument, *State v. Fleetwood,* 75 Wn.2d 80, 84, 448 P.2d 502 (1968); *State v. Buttry,* 199 Wash. 228, 251, 90 P.2d 1026 (1939), the prosecutor's duty is to ensure a verdict free of prejudice and based on reason. *State v. Huson,* 73 Wn.2d 660, 662, 440 P.2d 192 (1968), *cert. denied,* 393 U.S. 1096 (1969). Here, if the State's charges were true, defendant had engaged in a pattern of repulsive sexual and physical abuse of young girls over a long period of time. In such an emotionally charged trial, the use of a poem utilizing vivid and highly inflammatory imagery in describing rape's emotional effect on its victims was nothing but an appeal to the jury's passion and prejudice.[3] *See State v. Stacy,* 355 S.W.2d 377, 380–81

---

preserve such error for appeal. *State v. Brown,* 74 Wn.2d 799, 803, 447 P.2d 82 (1968). *See also State v. Reed,* 102 Wn.2d 140, 144, 683 P.2d 699 (1984). Indeed, neither of the two is required where the misconduct is so flagrant that no instruction could cure it. *State v. Peyton,* 29 Wn. App. 701, 712, 630 P.2d 1362, *review denied,* 96 Wn.2d 1024 (1981). The issue properly is before us.

[3]Here is the poem:

"There is no difference between being raped and being pushed down a flight of cement steps except that the wounds also bleed inside.

"There is no difference between being raped and being run over by a truck except that afterward men ask if you enjoyed it.

"There is no difference between being raped and being bit on the ankle by a rattlesnake except that people ask if your skirt was short and why you were out alone anyhow.

"There is no difference between being raped and going head first through a windshield except that afterward you are afraid not of cars but half the human race.

"The rapist is your boyfriend's brother. He sits beside you in the movies. Rape fattens on the fantasies of the normal male like a maggot in garbage.

"Fear of rape is a cold wind blowing all of the time on a woman's hunched back. Never to stroll alone on a sand road through pine woods never to climb a trail across a bald mountain without that aluminum in the mouth when I see a man climbing toward me.

"Never to open the door to a knock without that razor just grazing the throat. The fear of the dark side of hedges, the back seat of the car, the empty house, rattling keys like a snake's warning. The fear of the smiling man in whose pocket is a knife. The fear of the serious man in whose fist is hatred.

"All it takes to cast a rapist is to be able to see your body as jackhammer, as blowtorch, as adding–machine–gun. All it takes is hating that body your own, your

(Mo. Ct. App. 1962). In addition, the poem contained many prejudicial allusions to matters outside the actual evidence against Claflin.[4] *State v. Rose,* 62 Wn.2d 309, 382 P.2d 513 (1963); *State v. Ranicke,* 3 Wn. App. 892, 897, 479 P.2d 135 (1970); *State v. Wilson,* 188 Kan. 67, 360 P.2d 1092, 1096–97 (1961). In short, the reading of the poem was so prejudicial that no curative instruction would have sufficed to erase the prejudice it was bound to engender in the minds of the jurors.

With respect to the bounds of proper argument and the use of literary allusions, we can say it no better than it was said in *State v. Stacy,* 355 S.W.2d at 380–81, quoting in turn from *Evans v. Trenton,* 112 Mo. 390, 20 S.W. 614, 616 (1892):

> "The largest and most liberal freedom of speech is allowed an attorney in the conduct of his client's cause. 'The range of discussion is wide. * * * In his address to the jury it is his privilege to descant upon the facts proved or admitted in the pleadings; * * *. His illustrations may be as various as the resources of his genius; his argumentation as full and profound as learning can make it; and he may, if he will, give play to his wit, or wings to his imagination. *To this freedom of speech, however, there are some limitations.* * * * So, too, what a counsel says or does in the argument of a case must be pertinent to the matter on trial before the jury, and he takes the hazard of its not being so. Now, statements of facts not proved, and comments thereon, are outside of the case. They stand legally irrelevant to the matter in question, and are therefore not pertinent. If not pertinent, they are not within the privilege of counsel.' * * * Attorneys sometimes, with a persistency worthy of a better cause, press, during the trial, into the record, much that is

---

self, your muscle that softens to fat.

"All it takes is to push what you hate, what you fear onto the soft alien flesh. To bucket out invincible as a tank armored with treads without senses to possess and punish in one act, to rip up pleasure, to murder those who dare live in the leafy flesh open to love."

[4]For example, there was no evidence of a "razor just grazing" anyone's throat, nor of a knife in Claflin's pocket.

objectionable; and, as soon as they get verdicts, they seem to awake to a realization of the fact that they have performed works of supererogation, and have done more to win their causes than was required of them, or more than was necessary, and, as an excuse for this excess of energy, insist that it had no prejudicial effect, and no harm resulted from it."

We also agree with defendant that certain opinion evidence was improperly admitted. The defendant attempted to discredit the prosecuting witnesses by emphasizing their delay in reporting the abuse; the State sought to rebut this by a social worker's testimony that late reporting was not unusual among sexually abused children. The admission of an opinion with its statistical support that "delay in reporting is not unusual and that the length of delay correlates with the relationship between the abuser and child" is not an abuse of the trial court's discretion. *State v. Petrich,* 101 Wn.2d 566, 576, 683 P.2d 173 (1984). However, this witness went on to testify that it was her experience that 43 percent of child molestation cases were *reported* to have been committed by "father figures." An opinion that the defendant statistically is more likely to have committed the crime because of his membership in a group—in this case, his paternalistic relationship to the victims—is inadmissible. *State v. Petrich,* 101 Wn.2d at 576; *State v. Maule,* 35 Wn. App. 287, 293, 667 P.2d 96 (1983); *State v. Steward,* 34 Wn. App. 221, 223–24, 660 P.2d 278 (1983). Considering the defendant's characterization at trial as the victims' surrogate father,[5] the testimony was extremely prejudicial and should not have been admitted. ER 403.

Although our resolution of the two issues just discussed is dispositive, we will address certain other issues raised by defendant because they are likely to be raised again on retrial.

 Claflin contends that the photographs of the girls,

---

[5]The social worker testified that one victim "saw the defendant in this case as replacing a parent figure that she felt she did not have." Another of the girls testified that she had "loved him as a father–type image."

the rags, towels and hair were fruits of an unlawful search and should have been excluded because a search of his house, premises and curtilage was all that the warrant authorized, and then only for specific photographs. We do not consider the admissibility of the photographs because defendant's pro se brief does not explain how they were used or how he was prejudiced by their admission. RAP 10.3(a)(4); *State v. Brush*, 32 Wn. App. 445, 457, 648 P.2d 897 (1982), *review denied*, 98 Wn.2d 1017 (1983). The towels, rags and hair, however, clearly were admissible under the "plain view" doctrine which deems a seizure "reasonable" where there is a *prior justification* for the intrusion, *inadvertent discovery* of an item and *immediate knowledge* by the officer that it is evidence of a crime. *State v. Chrisman*, 100 Wn.2d 814, 819, 676 P.2d 419 (1984). Here, the car fell under the warrant's authorization by being parked on the "premises," *State v. Huff*, 33 Wn. App. 304, 309–10, 654 P.2d 1211 (1982); *United States v. Freeman*, 685 F.2d 942, 955 (5th Cir.), *reh'g denied*, 689 F.2d 190 (1982); Deputy Krause was not searching for the rags at the time of discovery, *State v. Adame*, 37 Wn. App. 94, 100, 678 P.2d 1299 (1984); *United States v. Antill*, 615 F.2d 648, 649 (5th Cir.), *cert. denied*, 449 U.S. 866 (1980); and her prior knowledge of certain intimate details of the assaults gave her probable cause to believe she was confronted with evidence. *Texas v. Brown*, 460 U.S. 730, 75 L. Ed. 2d 502, 514, 103 S. Ct. 1535 (1983); *State v. Alger*, 31 Wn. App. 244, 248, 640 P.2d 44, *review denied*, 97 Wn.2d 1018 (1982).

Claflin argues that the deputy could not "know" these items were evidence and that the "staleness" of the deputy's information precludes the existence of "probable cause." However, all that is required for "immediate knowledge" is a reasonable belief that evidence is present. *State v. Lair*, 95 Wn.2d 706, 716–17, 630 P.2d 427 (1981). Evidence need not be conclusive that a crime has been committed before it is subject to seizure under the plain view doctrine. *State v. Nicholas*, 34 Wn. App. 775, 663 P.2d 1356 (1983). Any tendency the evidence may have to limit

the field of possible perpetrators makes it relevant, *State v. Nicholas, supra,* and a court's refusal to find it unfairly prejudicial will not be reversed absent an abuse of discretion. *State v. Rupe,* 101 Wn.2d 664, 683 P.2d 571 (1984). Deputy Krause's information was not "stale" merely because the indecent liberties had taken place over a month before her interview with the girls. This information coupled with her present observations of items described by the victims warranted her reasonable belief at the time of the seizure that the rags and towels in Claflin's car were evidence of a crime. *State v. Lair, supra.* There was no abuse of discretion in admitting these articles.

 Claflin also challenges the relevancy of the testimony of a father of two victims concerning his daughters' unusual behavior around the time of the alleged abuse, arguing that its link to the molestation was "speculative." However, parents long have been allowed to testify as to a child's physical appearance after sexual abuse, *State v. Hunter,* 18 Wash. 670, 672, 52 P. 247 (1898), and we can find no reason why radical behavioral changes are any more speculative. *State v. Thomas,* 130 Ariz. 432, 636 P.2d 1214, 1216 (1981); *Collins v. State,* 365 So. 2d 113 (Ala. Crim. App.), *cert. denied,* 365 So. 2d 116 (1978); *Pierce v. State,* 230 Ga. 766, 199 S.E.2d 235, 237 (1973). Finally, on this issue, the State's "expert" testified that such behavior was consistent with and could be indicative of sexual assault. The trial court did not err by admitting such testimony.

Because defendant's remaining assignments of error touch on matters that likely will not be repeated, we do not address these claims, except to caution the State that, should defendant take the witness stand, scrupulous care should be exercised to honor his constitutional right not to be impeached because of his religious beliefs. Const. art. 1, § 11 (amend. 34).

Lastly, because defendant's conviction for tampering was so intimately connected with the other charges, and defendant's right to a fair trial was so tainted by the errors we have discussed, that count too must be reversed.

Reversed and remanded for new trial.

WORSWICK, A.C.J., and PETRIE, J., concur.

WORSWICK, A.C.J. (concurring)—I have signed the majority opinion, although reluctantly because of the strong case the State had against Bert Claflin. I add these words to express my exasperation at the misguided zeal that prompts a prosecutor to go to such lengths. A prosecutor should know that the notion of harmless error is not a license to inject naked prejudice into any case. There ought to be a law!

Review denied by Supreme Court January 18, 1985.