# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

# DIVISION  II

| | |
|---|---|
| STATE OF WASHINGTON, | No.  47017-9-II |
| Respondent, | |
| v. | |
| JAMES ELLIS CROCKETT, | UNPUBLISHED OPINION |
| Appellant. | |

JOHANSON, P.J. — James Crockett appeals his jury convictions for four counts of second degree child rape for sexually abusing his stepdaughter, M.W.[1]  We hold that (1) Crockett has failed to preserve error by failing to timely object to the admission of M.W.'s prior consistent statements, (2) Crockett fails to show the State's alleged misconduct caused enduring and lasting prejudice incurable by a jury instruction, (3) Crockett failed to preserve his improper impeachment challenge, (4) the trial court did not abuse its discretion by limiting Crockett's ability to discuss certain evidence, and (5) the cumulative error doctrine does not warrant reversal.  We affirm his convictions.

---

[1] *See* Division Two General Order 2011-1 ("in all opinions, orders and rulings in sex crime cases, this Court shall use initials or pseudonyms in place of the names of all witnesses known to have been under the age of 18 at the time of any event in the case").

FACTS

I. BACKGROUND

In 2008, when M.W. was 12 years old, her adopted mother, Rhonda Crockett, married Crockett and Crockett moved into the family home. Shortly after he moved into the home, Crockett began to touch M.W. inappropriately. Initially, Crockett touched M.W.'s breasts and vagina over her clothing, but shortly thereafter, the abuse progressed to digital penetration.

On Thanksgiving Day in 2008, M.W. disclosed the abuse to Rhonda.[2] Rhonda confronted Crockett who initially denied having touched M.W., but then admitted that he had done so, explaining that he accidentally made contact with M.W.'s leg and stomach as he was trying to instruct M.W. how to react if someone were to try to touch her inappropriately. Rhonda did not report the crime to police but the abuse ceased.

In 2013, the relationship between M.W. and Rhonda had become increasingly strained. At some point, M.W. sent a text message to a friend in which she stated that she and her brother "ha[d] a plan to get justice." 8 Report of Proceedings (RP) at 430. The tension between Rhonda and M.W. culminated in a physically violent incident in August 2013 when M.W. refused to drive Rhonda to a doctor's appointment. 8 RP at 364. In a Facebook post, M.W. described the frustration she felt living in the family home, disclosed that Rhonda's husband had raped her, and claimed that she was "'a dead girl walking.'" 8 RP at 362. Someone notified police, who arrived at the home shortly thereafter. Detective Cynthia Brooks and Child Protective Services agent Mara

---

[2] Crockett and Rhonda share a common surname. For ease of reference, we refer to Rhonda by her first name, intending no disrespect.

Campbell interviewed M.W.  M.W. disclosed that Crockett had touched her vagina 10 to 20 times previously.

## II. PROCEDURE

The State charged Crockett with four counts of second degree rape of a child.[3]  Before trial, Crockett sought records from M.W.'s childhood in Tennessee.  After reviewing the records, the trial court ruled that the Tennessee records were irrelevant to the allegations against Crockett and refused to provide those records to Crockett.

At trial, Crockett cross-examined M.W. extensively, during which he asked several questions about a violent incident between M.W. and Rhonda that preceded M.W.'s Facebook post, including text messages she sent to friends.  After M.W.'s cross-examination, the State sought to question Campbell and Brooks about prior consistent statements that M.W. made to them.  In the State's view, Crockett's cross-examination about the statements M.W. made to friends had at least implicitly suggested that she had a recent motive to fabricate the allegations against Crockett.

The trial court reserved ruling until Crockett had time to consider ER 801(d)(1) and respond.  Crockett made no contemporaneous argument to the contrary.  During Campbell's testimony, before the State asked questions about M.W.'s prior consistent statements, it asked whether the issue needed to be addressed outside the presence of the jury.  Defense counsel said, "Let's proceed."  9 RP at 663.  Crockett did not object during Campbell's testimony regarding

---

[3] A person is guilty of second degree rape of a child when the person has sexual intercourse with another who is at least 12 years old but less than 14 years old and not married to the perpetrator and the perpetrator is at least 36 months older than the victim.  RCW 9A.44.076(1).

M.W.'s prior consistent statements, but made one hearsay objection during Detective Brooks's testimony about those same statements.

In its case in chief, the State also called Rhonda as a witness. On a number of occasions, the State questioned Rhonda concerning the accuracy of statements that she had apparently made during interviews with Detective Brooks and Campbell.

Crockett testified on his own behalf. Crockett said he accidentally brushed against M.W.'s breast while discussing with her what to do if a man were to approach her inappropriately. Crockett claimed that he explained this accidental touching to Rhonda on Thanksgiving in 2008. He also explained that he demonstrated the accidental touching to one of the police officers on the night that police initially responded.

On direct examination, defense counsel questioned Crockett about the events on the night that police came to the home.

> [DEFENSE COUNSEL]:     So what happened next?
> [CROCKETT]:     Then after, next, the one inside policeman, he was writing his report and everything. And I asked him -- and he walked around, and he made this quotation that I don't believe what [M.W.'s] saying. I don't --

10 RP at 846. The State objected and the trial court excused the jury, striking Crockett's answer in the process.

On cross-examination, the State suggested that Crockett had earlier said that the alleged accidental touching incident actually occurred while Crockett was moving out of the house, implying that it was not during a conversation with M.W. about her protection.

In rebuttal, the State called Officer Eric Chell, explaining that it intended to ask Officer Chell whether or not "he made any opinions to anyone about the case." 11 RP at 893. The trial court allowed the questioning for this "one purpose only." 11 RP at 894. On the stand, Officer

4

Chell testified about the explanation that Crockett gave him about the accidental touching incident with M.W. Officer Chell ultimately answered that he had not offered any opinions to anyone about the case. Crockett did not object.

Following Officer Chell's testimony, defense counsel explained that Crockett had actually offered Officer Chell three explanations as to why he believed that M.W. might be accusing him of the crime: first, because she had been molested in Tennessee when she was a young child; second, because M.W. had accused Crockett of touching her breast in 2008, which was the incident discussed on Thanksgiving; and third, because of the alleged accidental touching during the moving incident. Crockett argued that the State had opened the door to the explanations that had not been mentioned, contending that the State "either get[s] all of the explanations or none of the explanations." 11 RP at 904. The trial court ruled that Officer Chell had been called for a limited purpose and that the State had not opened the door.

In closing argument, the prosecutor made the following remark:

> When [Crockett] was talking about his work with Vietnam veterans, one thing stood out for me. And I don't know if you caught it, but he said I work with Vietnam veterans, especially if they have children. I wrote that down in my notes, and I don't know if you captured that, but I thought that was something to consider.

11 RP at 962. Crockett did not object.

In the State's rebuttal closing argument, the prosecutor argued, "It's not just the defendant that was affected by this case. It was someone else, [M.W.], and justice for her, justice delayed for approximately six years." 11 RP at 987-88. The jury found Crockett guilty of all four counts. Crockett appeals.

5

ANALYSIS

I. PRIOR CONSISTENT STATEMENTS

Crockett argues for the first time that the trial court erred by permitting the State to question witnesses about M.W.'s prior consistent statements. Crockett has failed to preserve this alleged error.

ER 801(d)(1) provides that a statement is not hearsay if

[t]he declarant testifies at the trial or hearing and is subject to cross examination concerning the statement and the statement is . . . (ii) consistent with the declarant's testimony and is offered to rebut an express or implied charge against the declarant of recent fabrication or improper influence or motive.

But we do not consider an evidentiary error raised for the first time on appeal. *State v. Kirkman*, 159 Wn.2d 918, 926, 155 P.3d 125 (2007). A party may not raise an objection not properly preserved at trial absent manifest constitutional error. *State v. Powell*, 166 Wn.2d 73, 82, 206 P.3d 321 (2009). This rule is strictly construed because "trial counsel's failure to object to the error robs the court of the opportunity to correct the error and avoid a retrial." *Powell*, 166 Wn.2d at 82 (citing *Kirkman*, 159 Wn.2d at 935). A party who objects to the admission of evidence on one ground at trial may not assert a different ground for excluding that evidence on appeal. *State v. Price*, 126 Wn. App. 617, 637, 109 P.3d 27 (2005). And a theory not presented to the trial court may not be considered on appeal. *Price*, 126 Wn. App. at 637.

Here, following M.W.'s cross-examination, the State moved to question both Campbell and Detective Brooks as to M.W.'s prior consistent statements that would otherwise be inadmissible hearsay. The court reserved its ruling and defense counsel did not argue to the contrary or otherwise suggest that he disagreed.

Before the State prompted any prior consistent statement testimony, the trial court offered a hearing on the issue outside the jury's presence. Crockett declined a hearing and offered no objection. Crockett did not object during Campbell's testimony. The State then asked Detective Brooks several questions about M.W.'s statements made to Brooks about the alleged sexual abuse.

As those questions continued, Crockett made his sole objection:

> [THE STATE]:      Do you recall if [M.W.] ever said anything that he said to her explaining why -- what he was doing?
> [DETECTIVE BROOKS]:    I may have to refresh my memory, but I believe at one point *he* told her --
> [DEFENSE COUNSEL]:  Objection, hearsay.
> THE COURT:  Counsel, what was the objection?
> [DEFENSE COUNSEL]:  Hearsay.
> [THE STATE]:  Prior consistent statement, Your Honor.
> THE COURT:  I'll allow it.  You may answer the question.

10 RP at 729-30 (emphasis added). Detective Brooks continued to testify as to M.W.'s statements and Crockett did not object again.

Crockett did not object at any point to the State's use of M.W.'s prior consistent statements under ER 801(d)(1)(ii). He neither challenged the notion that the State could seek to introduce the prior consistent statements nor did he object to the State's interpretation of the rule. It appears Crockett made the hearsay objection that he did because Brooks's answer referred to what Crockett told M.W., and not to M.W.'s statement directly. The answer recounted hearsay within hearsay (Detective Brooks testifying as to what Crockett told M.W.). It was the only answer in which Brooks relayed something that someone else said to M.W.

At trial, Crockett objected on hearsay grounds, but not to the State's use of M.W.'s prior consistent statements specifically in the manner that he now contends was improper. Thus, he did not present the same theory to the trial court that he does here. *Price*, 126 Wn. App. at 637.

Crockett failed to preserve his challenge to the trial court's ruling to admit M.W.'s prior consistent statements.

## II. PROSECUTORIAL MISCONDUCT

Crockett contends that the State committed prosecutorial misconduct. But even if the State's comments were improper, Crockett fails to establish enduring and resulting prejudice incurable by a jury instruction.

### A. LEGAL PRINCIPLES

A defendant claiming prosecutorial misconduct must show both improper conduct and resulting prejudice. *State v. Fisher*, 165 Wn.2d 727, 747, 202 P.3d 937 (2009). Prejudice exists when there is a substantial likelihood that the misconduct affected the verdict. *State v. McKenzie*, 157 Wn.2d 44, 52, 134 P.3d 221 (2006). Because Crockett did not object at trial to the prosecutor's allegedly improper conduct, we must ascertain whether the prosecutor's misconduct was "so flagrant and ill-intentioned" that it caused an "enduring and resulting prejudice" incurable by a jury instruction. *State v. Stenson*, 132 Wn.2d 668, 719, 940 P.2d 1239 (1997).

Under this heightened standard of review, Crockett must show that "(1) 'no curative instruction would have obviated any prejudicial effect on the jury' and (2) the misconduct resulted in prejudice that 'had a substantial likelihood of affecting the jury verdict.'" *State v. Emery*, 174 Wn.2d 741, 761, 278 P.3d 653 (2012) (quoting *State v. Thorgerson*, 172 Wn.2d 438, 455, 258 P.3d 43 (2011)).

### B. WITNESS VERACITY COMMENTS

Crockett argues that the State improperly asked witnesses to comment on the veracity of other witnesses on cross-examination. In his view, the State was essentially asking witnesses to express their opinions as to whether other witnesses had been lying.

Credibility questions on cross-examination are harmless if they "were not so egregious as to be incapable of cure by an objection and an appropriate instruction to the jury." *State v. Stover*, 67 Wn. App. 228, 232, 834 P.2d 671 (1992).

Here, the State asked Rhonda,

> [THE STATE]: So my question to you is: Didn't you tell Detective Brooks that [Crockett] admitted to his son and admitted to you that he had touched [M.W.], yes or no?
> [RHONDA]: No. I didn't --
> [THE STATE]: And so if Detective Brooks were to state that you said that to her, would she be incorrect?
> [RHONDA]: I don't know because I'm not Detective Brooks.
> [THE STATE]: And if Mara Campbell was to state that, would she also be wrong?
> [RHONDA]: I don't know, because I'm not her either.

9 RP at 536. Crockett did not object.

> Another similar exchange ensued shortly afterward:

> [THE STATE]: Didn't you tell Mara Campbell that the reason [M.W.] ran away was because what -- of what [Crockett] had done to her?
> [RHONDA]: No, I did not tell Mara Campbell that. I gave a letter that [M.W.] had written to Mara Campbell.
> [THE STATE]: Okay. So, if Mara Campbell were to state that you told her that, would she be incorrect?
> [RHONDA]: I'm not going to make that conclusion.

9 RP at 541-42. Crockett did not object.[4]

As the State points out, each of the questions was presented in the form of a hypothetical question. The State asked that *if* another witness had given a conflicting account, then would that witness be incorrect. Even if we assume these questions were improper, certainly the questions were "not so egregious as to be incapable of cure by an objection and an appropriate instruction to the jury." *Stover*, 67 Wn. App. at 232. We reject the argument that the prosecutor's questions caused enduring prejudice incurable by an instruction.

### C. APPEALS TO JURY PASSION

Crockett also argues that the State committed prosecutorial misconduct by making two comments that were intended solely as inflammatory remarks meant to appeal to the jury's passion. Again, even if improper, Crockett cannot establish that the comments were so egregious as to be incurable by an instruction.

First, Crockett takes issue with the prosecutor's reference to Crockett's testimony that he worked with Vietnam veterans who had children, because in his view it unfairly implied to the jury that he seeks out children for malicious purposes. But his argument fails because even if improper, he cannot show misconduct incurable by an instruction from this passing somewhat ambiguous reference.

---

[4] There was a third exchange nearly identical to these set forth wherein the State asked Crockett himself whether he recalled making statements about accidentally touching M.W. to which Crockett claimed that he did not. Again, the State asked if a police officer testified that he did, would that officer be "incorrect?" 10 RP at 866.

The second statement suffers the same fate. In rebuttal closing, the State commented that M.W. was affected by this case and that she has been denied justice for six years. The State did not emphasize the reprehensible nature of the crime nor did it ask the jury to convict in an emotionally charged way. The State argued that the victim of a crime should get the justice she should have had previously.

In *State v. Pierce*, 169 Wn. App. 533, 555, 280 P.3d 1158 (2012), we held that a prosecutor in a murder trial committed improper and highly prejudicial misconduct when the prosecutor discussed the final moments of two murder victim's lives, adding emotionally charged embellishments that were essentially fabricated. We reasoned that the prosecutor's comments were nothing more than an improper appeal to the jury's sympathy. *Pierce*, 169 Wn. App. at 555; *see also State v. Claflin*, 38 Wn. App. 847, 849-50, 690 P.2d 1186 (1984) (finding an improper appeal to the jury's passion when a prosecutor in rape trial read poem to jury). The comments made here pale in comparison to cases where our courts have found flagrant appeals to the jury's passion.

Also, here, the jury was specifically instructed not to decide the case on sympathy, prejudice, or personal preference. Thus, we hold that Crockett cannot show enduring and resulting prejudice incurable by an appropriate instruction. This argument is unsuccessful.

### III. IMPEACHMENT OF STRICKEN TESTIMONY

Crockett argues that the trial court erred by admitting impeachment evidence to rebut testimony that had previously been stricken from the record. Crockett failed to properly preserve

this issue for appeal. As explained above, we do not consider an evidentiary error raised for the first time on appeal. *Kirkman*, 159 Wn.2d at 926. Here, the trial court struck Crockett's nonresponsive answer alleging that Officer Chell suggested that he did not believe M.W. on the night he responded to the family home. Later, the State explained unequivocally that it planned to call Officer Chell as a rebuttal witness both to contradict the facts surrounding Crockett's recollection of the accidental touching incident as he conveyed that to law enforcement and also to rebut any notion that Officer Chell had developed a personal opinion as to the veracity of one complaining witness or another. The trial court agreed to let the State question Officer Chell for a limited purpose and the State did so. Crockett did not object at any point. Consequently, he has failed to preserve this issue on appeal.

## IV. OFFICER CHELL'S INTERVIEW WITH CROCKETT

Crockett argues that the trial court abused its discretion by ruling that the State had not opened the door to evidence that Crockett had proffered additional explanations as to how M.W. could potentially have accused him of inappropriate touching. Again, we reject this argument.

The "opening the door" doctrine is an evidence doctrine that pertains to whether certain subject matter is admissible at trial. The term is used in two contexts:

> (1) [A] party who introduces evidence of questionable admissibility may open the door to rebuttal with evidence that would otherwise be inadmissible, and (2) a party who is the first to raise a particular subject at trial may open the door to evidence offered to explain, clarify, or contradict the party's evidence.

KARL B. TEGLAND, 5 WASHINGTON PRACTICE: EVIDENCE LAW AND PRACTICE § 103.14, at 66-67 (5th ed. 2007); *State v. Ortega*, 134 Wn. App. 617, 626, 142 P.3d 175 (2006). We review a trial court's determination that a party has opened the door for abuse of discretion. The doctrine promotes fairness by preventing one party from bringing up a subject to gain an advantage and

then barring the other party from further inquiry. *State v. Avendano-Lopez*, 79 Wn. App. 706, 714, 904 P.2d 324 (1995) (citing *State v. Gefeller*, 76 Wn.2d 449, 455, 458 P.2d 17 (1969), *overruled on other grounds by State v. Hill*, 123 Wn.2d 641, 870 P.2d 313 (1994)).

Here, on cross-examination, the State asked Crockett whether he told Officer Chell that he may have accidentally brushed against M.W. as he was moving items out of the home that they were moving from. Crockett testified that he did not recall doing so and that the only time he inadvertently touched M.W. was in the earlier demonstration about how to defend herself. Crockett continued to assert that he did not remember telling Officer Chell about any touching during a moving day.

The State called Officer Chell to impeach Crockett's denial about telling Chell that he inadvertently touched M.W. when teaching her how to defend herself. Officer Chell explained that Crockett had in fact told him that his hand inadvertently brushed against M.W.'s breast when they were moving from one house to another. Before cross-examination, Crockett argued at sidebar that because the State had introduced evidence of a touching incident that had not been previously discussed, that Crockett should be able to ask Chell about any of the three explanations for the report of abuse that he had conveyed to authorities at one time or another. The trial court refused to rule that the State had opened the door to other potential explanations that Crockett wished to offer.

Crockett does not adequately explain nor does he cite any helpful authority as support for the proposition that the State's rebuttal witness that addressed one aspect of a defendant's testimony thereby opens the door for the defense to admit additional matters. Before trial began,

the court ruled that evidence of the Tennessee incident would not come in as evidence or be discussed as an "explanation" by the defense. The other two potential explanations were each before the jury. It is unclear from the record what exactly Crockett sought to achieve even had the trial court ruled in his favor. The trial court did not abuse its discretion by ruling that the State had not opened the door. The court's decision was not based on manifestly unreasonable grounds or untenable reasons.[5]

## V. CUMULATIVE ERROR

Finally, Crockett argues that the cumulative error doctrine compels reversal of his convictions. We disagree.

"The cumulative error doctrine applies where a combination of trial errors denies the accused a fair trial even where any one of the errors, taken individually, may not justify reversal." *In re Det. of Coe*, 175 Wn.2d 482, 515, 286 P.3d 29 (2012). The doctrine does not apply where the errors are few and have little or no effect on the outcome of the trial. *State v. Weber*, 159 Wn.2d 252, 279, 149 P.3d 646 (2006).

---

[5] Crockett also appears to argue that the trial court erred by disallowing him to impeach Officer Chell. In the section he dedicates to this contention, Crockett fails to cite a single time to the record or to any authority relevant or otherwise. RAP 10.3(a)(6). We decline to reach this issue. Furthermore, what Crockett is essentially asking the court to do is to permit him to elicit testimony that would amount to a witness's opinion on innocence or guilt which is improper and inadmissible evidence. *State v. Johnson*, 152 Wn. App. 924, 930, 219 P.3d 958 (2009).

No. 47017-9-II

Here, Crockett has not established that he was denied a fair trial. He has failed to even argue how any alleged error effected the outcome of his trial. Thus, this argument fails. We affirm Crockett's convictions.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

JOHANSON, P.J.

We concur:

MELNICK, J.

SUTTON, J.