# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

# DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 47036-5-II |
| Respondent, | |
| v. | |
| WARREN CARLOS MABRY, | UNPUBLISHED OPINION |
| Appellant. | |

JOHANSON, P.J. — A jury found Warren Mabry guilty of six counts of first degree child rape. Mabry appeals, arguing that he was deprived of a fair trial because the State committed prosecutorial misconduct in closing argument. Mabry also alleges, and the State concedes, that the trial court erred by failing to consider his ability to pay before imposing legal financial obligations (LFOs). In a statement of additional grounds (SAG), Mabry challenges the adequacy of his trial representation. We hold that Mabry's prosecutorial misconduct arguments fail because he cannot show that the alleged misconduct was flagrant and ill-intentioned misconduct that was incurable by an instruction. Likewise, Mabry's SAG arguments lack merit. We affirm in part, reverse in part, and remand to the trial court to strike the discretionary LFOs.

FACTS

In June 2013, young A.G.[1] split her residential time between her two biological parents. She spent weekends with her father and her stepmother, Valeria Jacobson, and stayed during the week with her mother and her mother's then husband, Mabry. When her mother was at work or running errands, Mabry supervised A.G.

One day in June, A.G. spontaneously told Jacobson that Mabry had been "touch[ing]" her. 2 Report of Proceedings (RP) at 260. When Jacobson asked what she meant, A.G. pointed to her chest and vaginal area. Shortly thereafter, A.G. described to Jacobson sexual abuse involving Mabry. Jacobson and A.G.'s father took A.G. to the hospital where doctors conducted a physical examination and collected deoxyribonucleic acid (DNA) swabs. Later, A.G. consulted with a child abuse pediatrician and A.G. disclosed several instances of sexual abuse that she described consistently with the same incidents that she had previously related to Jacobson. Detectives from the Vancouver Police Department's child abuse unit also interviewed A.G. where she again consistently recalled acts of sexual abuse by Mabry.

The State charged Mabry with six counts of first degree rape of a child contrary to RCW 9A.44.073.[2] At trial, A.G. and Jacobson testified regarding A.G.'s disclosures of sexual abuse.

---

[1] *See* Division Two General Order 2011-1 ("in all opinions, orders and rulings in sex crime cases, this Court shall use initials or pseudonyms in place of the names of all witnesses known to have been under the age of 18 at the time of any event in the case").

[2] A person is guilty of first degree rape of a child when the person has sexual intercourse with another who is less than 12 years old and not married to the perpetrator and the perpetrator is at least 24 months older than the victim. RCW 9A.44.073.

The jury also heard audio recordings of A.G.'s interviews with the child abuse pediatrician and the investigating detective.

The State also called Brad Dixon, the DNA section supervisor for the Washington State Patrol Crime Lab as a witness. Dixon recalled conducting DNA tests on A.G.'s genital swabs and various articles of her clothing. Dixon was able to obtain a DNA sample from a section of material that he cut from the rear portion of A.G.'s underwear. Analysis of the sample revealed a combined profile consisting of DNA from A.G. and Mabry. Dixon explained that the presence of a certain enzyme in the sample established that the sample was comprised at least in part of biological fluid.

Mabry did not testify or call any witnesses. During his closing argument, Mabry's defense largely centered around his theory that Jacobson and A.G.'s father, endeavoring to obtain full custody, coached A.G. to fabricate the allegations of sexual abuse. The defense referred to A.G. as a "pawn" and Mabry as a "scapegoat" in a scheme orchestrated by Jacobson and A.G.'s father who sought to accomplish two goals. 7 RP at 857. First, as mentioned, they wished to remove A.G. from the custody of her mother and what they felt was a neglectful parenting situation. And second, the defense suggested that A.G.'s father wished to avoid paying child support as he was already in arrears. Later, Mabry suggested that the issue was a "custody issue" and a "bias issue" and implored the jury to take prejudice of that nature into consideration.

The State addressed these contentions in rebuttal closing argument where the prosecutor said,

> There's a principle used in logical problem solving known as "Occam's Razor", which states, "That among competing hypotheses, the one that make said [sic] the fewest assumptions is the one that you should select." So in other words, the simplest answer is going to be the right one. That's exactly what we have going on here.

3

7 RP at 871.

Also during rebuttal closing, the State's final remarks to the jury included the following statements:

> We don't have the technology to go back in time and stop bad things from happening. We don't have the technology to take the bad memories out of someone's head. [A.G.] had to deal with that ongoing sexual abuse. She had to live with it. We are still seeing what she's been left to deal with. And now the time has come for [Mabry] to live with it.

7 RP at 880.

The jury found Mabry guilty on all counts. As part of Mabry's sentence, the trial court imposed LFOs and acknowledged that Mabry would have a "limited" ability to pay based on the sentence the court imposed. Mabry did not object. Mabry appeals.

ANALYSIS

I. PROSECUTORIAL MISCONDUCT

Mabry contends that the State committed prosecutorial misconduct in two ways during its rebuttal closing argument—first, by minimizing the burden of proof through the use of the "Occam's Razor" comment, and second, by making a flagrant appeal to the jury's passion and prejudice. Mabry asserts that the cumulative effect of this alleged misconduct requires reversal. We disagree.

A. LEGAL PRINCIPLES

A defendant claiming prosecutorial misconduct must show both improper conduct and resulting prejudice. *State v. Fisher*, 165 Wn.2d 727, 747, 202 P.3d 937 (2009). Prejudice exists when there is a substantial likelihood that the misconduct affected the verdict. *State v. McKenzie*, 157 Wn.2d 44, 52, 134 P.3d 221 (2006). Because Mabry did not object at trial to the prosecutor's

allegedly improper conduct, we must ascertain whether the prosecutor's misconduct was "so flagrant and ill-intentioned" that it caused an "enduring and resulting prejudice" incurable by a jury instruction. *State v. Stenson*, 132 Wn.2d 668, 719, 940 P.2d 1239 (1997).

Under this heightened standard of review, Mabry must show that "(1) 'no curative instruction would have obviated any prejudicial effect on the jury' and (2) the misconduct resulted in prejudice that 'had a substantial likelihood of affecting the jury verdict.'" *State v. Emery*, 174 Wn.2d 741, 761, 278 P.3d 653 (2012) (quoting *State v. Thorgerson*, 172 Wn.2d 438, 455, 258 P.3d 43 (2011)). In analyzing a prosecutorial misconduct claim, we "focus less on whether the prosecutor's misconduct was flagrant or ill intentioned and more on whether the resulting prejudice could have been cured." *Emery*, 174 Wn.2d at 762. "'The criterion always is, has such a feeling of prejudice been engendered or located in the minds of the jury as to prevent a [defendant] from having a fair trial?'" *Emery*, 174 Wn.2d at 762 (alteration in original) (quoting *Slattery v. City of Seattle*, 169 Wash. 144, 148, 13 P.2d 464 (1932)).

## B. THE STATE DID NOT MINIMIZE THE BURDEN OF PROOF

Mabry contends that the prosecutor's use of the "Occam's Razor" comment suggested to the jury that the State should be believed because the "simplest answer" is ordinarily the right one. Mabry argues that the State therefore deprived him of a fair trial by minimizing the burden of proof. This is so in Mabry's view because a request for the jury to render a verdict based on the "simplest answer" caused it to disregard the reasonable doubt standard. We disagree that the State's Occam's Razor remark improperly caused the jury to disregard the State's burden of proof.

Mabry is correct that arguments by the prosecution that shift or misstate the State's burden to prove the defendant's guilt beyond a reasonable doubt constitute misconduct. *State v. Lindsay*,

180 Wn.2d 423, 434, 326 P.3d 125 (2014). But we review a prosecutor's comments during closing argument in the context of the total argument, the issues in the case, the evidence addressed in the argument, and the jury instructions. *Thorgerson*, 172 Wn.2d at 462 (Chambers, J., dissenting). And a prosecutor has wide latitude in closing argument to draw reasonable inferences from the evidence and to express such inferences to the jury. *State v. Hoffman*, 116 Wn.2d 51, 94-95, 804 P.2d 577 (1991).

Here, in context, the reference to the concept of "Occam's Razor" did not suggest to the jury that it should disregard the proper standard of proof in favor of the "simplest explanation." Instead, the prosecutor's reference was responsive to defense counsel's assertion that A.G. had been coached to fabricate false accusations of sexual abuse. He used the statement to segue into a discussion about the reasonableness of Mabry's defense in light of the State's evidence at trial. The prosecutor acknowledged that although it is perhaps possible in some instances for a child to be coached, he argued that such a theory was unreasonable considering the facts and evidence of Mabry's case.

The prosecutor then alluded to various pieces of evidence and drew inferences from that evidence to undermine Mabry's defense. For instance, the State argued that it would be nonsensical to have A.G. visit doctors, counselors, and other medical professionals if no abuse had actually occurred. The prosecutor also reminded the jury about how emotional Jacobson had become while testifying and how uncomfortable it was for A.G. to disclose the details of her abuse during her interviews, implying that such responses are difficult to feign. Additionally, the State returned to the issue of Mabry's DNA having been found in A.G.'s underwear, asserting that

Mabry's theory that his DNA could have been left by doing laundry or by dressing A.G. was at best dubious.

Finally, the prosecutor returned to the concept of reasonable doubt and argued that the evidence presented created an abiding belief in Mabry's guilt. The trial court also gave the jury the proper reasonable doubt instruction. Accordingly, considering the issues, the evidence, and the jury instructions, the "Occam's Razor" comment was not improper and did not minimize the State's burden of proof. The State did not implore the jury to find Mabry guilty merely because it was the "simplest answer." The theme of the State's rebuttal closing argument was that it was far more reasonable to believe A.G. and the evidence that supported her allegations, including the DNA evidence, rather than for the jury to believe that A.G. had been coached by her father and Jacobson to make the sexual abuse allegations in order to further their custody battle and to avoid child support. For the foregoing reasons, we hold that Mabry cannot establish that the State committed prosecutorial misconduct on the basis of the "Occam's Razor" remark because taken in context, this remark was not improper.

### C. APPEAL TO PASSION

Mabry contends that the State also committed prosecutorial misconduct when the prosecutor expressed regret that it was not possible to "'go back in time and stop bad things from happening [to A.G.].'" Br. of Appellant at 16. He asserts that the cumulative effect of this "flagrant appeal to passion" combined with the statements examined above, warrant reversal of his convictions. Br. of Appellant at 16. Again, we disagree.

Appeals to jury passion are inappropriate. *State v. Brett*, 126 Wn.2d 136, 179, 892 P.2d 29 (1995). Although not barred from referring to the heinous nature of a crime, a prosecutor

nevertheless retains the duty to ensure a verdict "'free of prejudice and based on reason.'" *State v. Pierce*, 169 Wn. App. 533, 553, 280 P.3d 1158 (2012) (quoting *State v. Claflin*, 38 Wn. App. 847, 849-50, 690 P.2d 1186 (1984)). Furthermore, "'[a] prosecutor is not muted because the acts committed arouse natural indignation.'" *State v. Borboa*, 157 Wn.2d 108, 123, 135 P.3d 469 (2006) (quoting *State v. Fleetwood*, 75 Wn.2d 80, 84, 448 P.2d 502 (1968)).

Mabry contends that the prosecutor's mention of the inability to "'go back in time and stop bad things from happening [to A.G.],'" and his reference to the fact that "'bad memories'" cannot be erased along with his statement that A.G. has to continue to "'deal'" with having been victimized are these sorts of inappropriate comments. Br. of Appellant at 16. But a brief examination of relevant case law reveals that the comments at issue here, although improper, do not rise to the level of improper comments that our courts have found sufficiently egregious to warrant reversal.

In *State v. Belgarde*, 110 Wn.2d 504, 508, 755 P.2d 174 (1988), our Supreme Court reversed and ordered a retrial where the prosecutor referred to an American Indian group with which the defendant was affiliated as a "'deadly group of madmen'" and "'butchers that kill indiscriminately'" and told jurors that the group was "'something to be frightened of.'" Similarly in *State v. Rafay*, 168 Wn. App. 734, 827-29, 285 P.3d 83 (2012), Division One of this court concluded that a prosecutor's conduct had been "highly improper" where he repeatedly likened the crime in that case to a highly publicized act of violence by a terrorist group. And in *Pierce*, we held that a prosecutor in a murder trial committed improper and highly prejudicial misconduct when the prosecutor discussed the final moments of two murder victims' lives, adding emotionally charged embellishments that were essentially fabricated. 169 Wn. App. at 555. We reasoned that

the prosecutor's comments were nothing more than an improper appeal to the jury's sympathy. *Pierce*, 169 Wn. App. at 555; *see also Claflin*, 38 Wn. App. at 849-50 (finding an improper appeal to the jury's passion when a prosecutor in rape trial read poem to jury).

Here, even assuming the prosecutor's comments were improper, it was not misconduct such that "(1) 'no curative instruction would have obviated any prejudicial effect on the jury' and (2) the misconduct resulted in prejudice that 'had a substantial likelihood of affecting the jury verdict.'" *Emery*, 174 Wn.2d at 761 (quoting *Thorgerson*, 172 Wn.2d at 455). The prosecutor did not make a series of inflammatory comments nor did he suggest that the jury should decide the case based on its sympathy for A.G. The prosecutor did not fabricate details or embellish facts. In the context of the entire argument, the challenged statement was one fleeting remark at the very end of a lengthy closing argument.

Furthermore, the prejudice resulting from the improper comments did not have a substantial likelihood of affecting the jury verdict because the evidence against Mabry was fairly strong. A.G. testified—frequently with graphic detail—consistently with her previous disclosures. The jury heard two recorded interviews during which A.G. consistently recalled the same acts of abuse. Mabry's DNA was found in A.G.'s underwear. Consequently, Mabry cannot demonstrate that the challenged remark caused such prejudice that it had a substantial likelihood of affecting the verdict or that an instruction could not have cured any resulting prejudice. Accordingly, we hold that Mabry's prosecutorial misconduct argument fails.

## II.  LEGAL FINANCIAL OBLIGATIONS

Mabry argues that the trial court erred by imposing a number of discretionary LFOs without making the necessary inquiry into his current and future ability to pay.  The State disagrees with Mabry's characterization of some of the LFOs as discretionary but otherwise asks this court to strike the majority of the LFOs that the trial court imposed and suggests that no hearing is necessary on remand because it withdraws its request for discretionary LFOs.  We accept the State's concession and we remand to strike the discretionary LFOs.

Generally, trial courts have the authority to impose costs and fees on a convicted defendant. RCW 9.94A.760(1); RCW 10.01.160(1).  Trial courts have wide latitude in matters related to sentencing under these statutes.  *State v. Barnes*, 117 Wn.2d 701, 710, 818 P.2d 1088 (1991). Under RCW 10.01.160(3), "[t]he court shall not order a defendant to pay costs unless the defendant is or will be able to pay them.  In determining the amount and method of payment of costs, the court shall take account of the financial resources of the defendant and the nature of the burden that payment of costs will impose."

RCW 10.01.160(3) requires the record to reflect that the sentencing court made an individualized inquiry into the defendant's current and future ability to pay before it imposes LFOs.  *State v. Blazina*, 182 Wn.2d 827, 838-39, 344 P.3d 680 (2015).  To carry out this task, courts must consider certain factors, such as incarceration, other existing debts, and whether the defendant meets the GR 34 standard for indigency.  *Blazina*, 182 Wn.2d 838.

Subject to certain exceptions, we have the discretion to decline to review issues not raised

before the trial court. RAP 2.5(a). But as *Blazina* makes clear, each appellate court is permitted

to make its own decision to review LFO issues on appeal. 182 Wn.2d 835. Here, Mabry did not

object to the discretionary LFOs imposed at sentencing, but we exercise our discretion to reach the

issue.

The State requests that imposed discretionary LFOs be stricken from Mabry's judgment

and sentence.[3] The State asserts that remand for a hearing is unnecessary because it withdraws its

request for repayment of discretionary LFOs. We agree.

However, the State is correct that the $100 crime lab fee is controlled by a statute separately

from those that govern a trial court's discretion to impose LFOs generally. The specific provision

provides,

> When a person has been adjudged guilty of violating any criminal statute of this
> state and a crime laboratory analysis was performed by a state crime laboratory, in
> addition to any other disposition, penalty, or fine imposed, the court *shall* levy a
> crime laboratory analysis fee of one hundred dollars for each offense for which the
> person was convicted. Upon a verified petition by the person assessed the fee, the
> court *may* suspend payment of all or part of the fee if it finds that the person does
> not have the ability to pay the fee.

Former RCW 43.43.690(1) (1992) (emphasis added).

Thus, the crime lab fee imposed here was mandatory because the State Patrol crime lab

performed DNA analysis in connection with Mabry's case. And former RCW 43.43.690(1)

controls in lieu of the other LFO statutes in this instance because an applicable specific statute

---

[3] The State disputes Mabry's calculation of the amount of obligations imposed. Specifically, the
State argues that because the jury demand fee ($250) and criminal filing fee ($200) were not
actually calculated as "court costs," the State does not "believe that the clerk reads the J&S as
having imposed those costs." Br. of Resp't at 10.

supersedes a relevant general statute. *State v. Moon*, 124 Wn. App. 190, 193, 100 P.3d 357 (2004).

Furthermore, although the statute provides that the person assessed the fee may petition to have

payment suspended, there is nothing in the record to suggest that Mabry has filed such a petition.

For all of the foregoing reasons, we uphold the imposition of the DNA fee but remand for the trial

court to strike the discretionary LFOs from the judgment and sentence.

## III. STATEMENT OF ADDITIONAL GROUNDS

In his SAG, Mabry appears to assert that he received ineffective assistance of counsel

during his trial. Specifically, he contends,

> I believe my attorney at the time did not do all that he could to represent me, all the
> people he said he wo[uld] be at the tri[al] didn't seem to be interviewed
> [thor]oughly enough. I feel at the time, that I wasn't represented fair[ly].

SAG at 1.

Although it is clear from his statement that Mabry believes that there were shortcomings

regarding the quality of his representation, he fails to inform us as to the nature or occurrence of

the alleged errors with any meaningful specificity. RAP 10.10(c). Mabry does not identify the

witness or witnesses that he alleges were not interviewed thoroughly enough nor does he discuss

what information a more thorough interview would have revealed. We are not required to search

the record in support of Mabry's claims. RAP 10.10(c).

And to the extent that his alleged errors rely on matters outside the record, the appropriate

means to raise such issues is through a personal restraint petition. *State v. McFarland*, 127 Wn.2d

No. 47036-5-II

322, 338, 899 P.2d 1251 (1995). Accordingly, we decline to reach the merits of his SAG, affirm Mabry's convictions, reverse the discretionary LFOs, and remand for the trial court to strike the discretionary LFOs.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

JOHANSON, P.J.

We concur:

MELNICK, J.

SUTTON, J.